**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| v. | ) | No. 3:14-cr-00037-1 |
| | ) | Judge Sharp |
| **HECTOR PALMA ZAPIEN** | ) | |
| **a/k/a Hector Paima Zapien** | ) | |

## ORDER AND MEMORANDUM OPINION

Pending before the Court is the Government's Emergency Motion to Review Release Order (Docket No. 26), by which the Government seeks to overturn Magistrate Judge Bryant's Order (Docket No. 18) allowing Defendant's release pending trial. Although the Court will not overturn the release Order, the Court will impose additional conditions, so as to ensure Defendant's attendance at pretrial proceedings and trial.

**I.**

On February 11, 2014, Defendant was arrested on a criminal complaint charging one count of structuring in violation of 31 U.S.C. § 5324. That same day, search warrants were executed at five locations, including Defendant's residence. During the search of Defendant's residence, agents discovered fraudulent documents (including ten Social Security cards, seven of which were fraudulent), six firearms (three handguns, two rifles, and one shotgun), a currency counter, and approximately $180,000 in cash, the bulk of which was found in a safe next to a loaded handgun.

On February 21, 2014, Magistrate Judge Bryant held a combined preliminary hearing and detention hearing as to Defendant and three others who had been charged by criminal complaint. He found probable cause to bind Defendant and the others over for grand jury proceedings, but released all of the individuals on bond with certain conditions.

1

Subsequently, the grand jury returned an Indictment against Defendant and the three others. The Indictment is in thirty-three counts and contains forfeiture allegations. Among other things, the Indictment alleges that Defendant structured in excess of $9,000,000 over a five year-period for transfer to Mexico and other Central American locations. On February 25, 2014, the Department of Homeland Security ("DHSA") reinstated Defendant's previous order of removal.

The Government claims it received a copy of the reinstated order on March 10, 2014, and was advised that the order would be enforced immediately and that Defendant would be transferred the following day to Alabama to begin the removal proceedings. Thus, the Emergency Motion for Review was filed in this Court.

In response to the Government's Emergency Motion, Defendant argues that "[t]he problems currently existing between two departments within the Executive Branch, the U.S. Department of Justice and the U.S. Department of Homeland Security are of the government's own making." (Docket No. 28 at 2). He also argues that the Court is called upon to reconcile the provisions of the Bail Reform Act of 1987, as amended, 18 U.S.C. § 3141 *et seq.,* with the Immigration and Nationality Act of 1965, 8 U.S.C. § 1101, *et seq.*, and, specifically the latter's provision that when an alien is found to be in the country illegally, the Department of Homeland Security "'may remove and deport that person,'" or, "'if such an alien is believed to have committed a federal offense, including reentry, ICE [Immigration and Customs Enforcement] may choose to postpone the removal and deportation of that person while the U.S. Attorney's office brings a criminal prosecution.'" (Id. quoting United States v. Trujillo-Alvarez, 900 F. Supp. 2d 1167, 1169 (D. Ore. 2012)).

The Court was informed at a hearing held on March 13, 2014, that whatever internecine

2

dispute may have occurred within the Executive branch, it has been resolved because the DHS has decided to forego removal proceedings at this time in favor of the criminal proceeding pending in this Court. Accordingly, the Court turns to the issue of whether Defendant should be released in light of the return of the Indictment.

**II.**

When a defendant is released by order of a Magistrate Judge, the "Government may file with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(a)(1). Review of the Magistrate Judge's decision is *de novo*, "although the district court 'may conduct its review and base its decision on the evidence presented to the magistrate at the detention hearing.'" United States v. Stokes, 2006 WL 3843589, at *1 (M.D. Tenn. Dec. 22, 2006) (citation omitted). In its discretion, the Court may also consider proffer testimony. United States v. Stone, 608 F.3d 939, 948 (6th Cir. 2010).

In conducting its review, the Court must determine whether the Government has met its "ultimate burden" of "prov[ing] that no conditions of release can assure that the defendant will appear and to assure the safety of the community." Id. at 946. In making that determination, the Court considers several factors, including, (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g).

With those standards in mind, the Court has conducted a *de novo* review of the record, including listening to a recording of the lengthy detention hearing before Magistrate Judge Bryant. Based upon that review, the Court concludes that there are conditions of release that will ensure

Defendant's appearance and the safety of the community, albeit conditions in addition to those previously imposed by Magistrate Judge Bryant.

### III.

In its Emergency Motion, the Government argues:

> In light of the defendant's financial resources, access to various fraudulent identification documents, access to firearms, the current charges now pending and the weight of the evidence, the United States believes that the defendant is both a serious risk of flight and a danger to the community. At the time of his arrest, the defendant admitted that he had fraudulently obtained a Social Security number by using a false "green" card. At that time, the defendant also possessed a Tennessee driver's license which he had obtained by using the fraudulent Social Security number.

(Docket No. 26 at 2). However, and save for the now pending Indictment, all of those matters were before Magistrate Judge Bryant and considered by him when he decided that release under specified conditions was appropriate.

Certainly the return of the Indictment places the case in a different posture. Instead of a single charge of structuring in violation of 31 U.S.C. § 5324, which carries a maximum penalty of five years imprisonment, the Indictment levels a host of charges, some more serious than others. Specifically, Defendant is charged with conspiracy in violation of 18 U.S.C. § 371 (Count 1); eighteen counts of structuring in violation of 31 U.S.C. § 5324(a)(3) (Counts 2-19); operating an unlicensed money-transmitting business in violation of 18 U.S.C. 1960(1)(b) (Count 20); making a false statement to a bank in violation of 18 U.S.C. § 1014 (Count 21); six counts of wire fraud in violation of 18 U.S.C. § 1343 (Counts 22-27); illegal reentry in violation of 8 U.S.C. §1326(a)(2)(b) (Count 28); and being an illegal alien in possession of a firearm in violation of 18 U.S.C. § 922(g)(5). For each count, Defendant faces a possible prison sentence of from five to thirty years. He also faces the possibility of forfeiting a substantial amount of money and real and personal

property.

However, and even acknowledging that a "grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged," Stone, 609 F.3d at 945, the nature and circumstances underlying the present charges are the same as those before Magistrate Judge Bryant. In fact, the Government is relying upon virtually the same record.

Moreover, given the allegations presented at the detention hearing against Defendant and his three co-Defendants, the prospect of additional and more serious charges loomed, the most obvious being conspiracy, illegal reentry, and unlawful possession of a firearm, all of which are alleged in the Indictment. The investigation has been ongoing since November 2011, and began after Defendant ignored what defense counsel characterized as a "Dutch Uncle" talk from the First Federal Bank of Dickson in June 2011 about cash-reporting requirements. Throughout the investigation, DHS knew that Defendant was in this country unlawfully.

The possibility that DHS would enter the fray and reinstate its order of removal also lurked in the background. According to DHS Agent Tony Langeland, who testified at the detention hearing, immigration detainers had been placed on all four Defendants with the intention being that, if they were released pending trial, DHS would move on those detainers, Defendants would likely be transferred to Louisiana, and supervisory agency personnel would likely recommend to the Immigration Judge that no bond be set.

Regardless, the Court is convinced that, even given the nature and circumstances of the charges contained in the Indictment, there are conditions, or combinations of conditions, which can be formulated to ensure both Defendant's appearance and the safety of the community.

As for the weight of the evidence against Defendant, the Sixth Circuit stated in Stone stated

that "[t]his factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of guilt." 608 F.3d at 948. At least one court has "construe[d] this statement to mean both evidence of dangerousness and evidence of risk of flight given that only dangerousness was at issue in Stone." United States v. Villegas, 2011 WL 1135018, at *8 (E.D. Tenn. Mar. 25, 2011). "In other words, this factor goes to how convincing the government's arguments of dangerousness and risk of flight are." Id.

The fact that Defendant is (1) in this country illegally based upon a fictitious "green" card; (2) was found with fraudulent identification documents; (3) was in possession of a substantial amount of cash; and (4) has a Tennessee driver's license that was issued based upon a false Social Security number are all obvious grounds for concern. Additionally, the evidence presented shows that Defendant reentered this country illegally, having done so in 1995, 1998, and 2001. This, too, is cause for concern.

On the other hand, Defendant owns at least two businesses, which may provide some explanation for his possession of the cash that was recovered from his home. He owns the El Camina restaurant in Hickman County, Tennessee, and the Las Palmas Market in Dickson County, Tennessee. Among other things, the market provides a money-transferring service for customers who desire to send money back to Mexico. Neither Agent Langeland, nor Internal Revenue Service Agent Christopher Pikelis, who also testified at the detention hearing, had any evidence that the money found in Defendant's residence was from drug proceeds or any other illegal activity.

Additionally, certain of the factors listed in 18 U.S.C. 3142(g) pertaining to the history and character of Defendant, including his family ties, employment, length of residence in the community, and community ties, lessen this Court's concern that he might flee.

Defendant has been in this country for more than a quarter of a century. He is married and the father of four children. In addition to his businesses, he owns a home and a lot in Hickman County.

Defendant also appears to have a good reputation and strong community support, as evidenced by the testimony of Loretta Street and Humberto Fraire at the detention hearing. Both are former educators and have known Defendant for more than a decade.

Ms. Street testified that Defendant was well thought of in the community, that she did not believe he would flee, and that he would "absolutely not" pose a danger were he to be released pre-trial. Mr. Fraire testified that Defendant provides an essential service to the Hispanic community in Dickson County, and Mr. Fraire "definitely" believes that Defendant would abide by any pretrial conditions imposed because Defendant has "too much to lose" given his businesses and the fact that his family resides in Dickson County.

The strong familial and community ties suggest that Defendant has a strong interest to remain in the jurisdiction and face the charges against him. Moreover, the Court is of the opinion that there are additional conditions that were not imposed by Magistrate Judge Bryant which will provide additional incentive for Defendant to stay and reduce the likelihood that he will flee. In this regard, the Court will (1) require Defendant to enter into a bond in the amount of $100,000, secured by $10,000 in cash to be deposited with the court; and (2) require Defendant and his wife to agree that any interest in their residence will be automatically forfeited if Defendant does not appear as required.[1] Further, the Court will impose as additional conditions that Defendant be subjected to

---

[1] The Court recognizes the Government's argument at the hearing that a bond based upon Defendant's residence is of little value because the home is subject to a *lis pendens* lien in light of the forfeiture allegations. However, there is value in this imposed condition in the sense that the home is subject to automatic forfeiture should Defendant fail to appear, without the need to prove the forfeiture allegations.

home confinement and electronically monitored at all times. The Court believes that these conditions, in addition to those imposed by Magistrate Judge Bryant, will reasonably ensure Defendant's presence for all court proceedings.

Finally, the Court finds that the Government has failed to establish any real danger to the community. "In terms of dangerousness, Congress thought it was especially significant if the charges include 'a crime of violence . . . a Federal crime of terrorism, . . . or involve[] a . . . firearm, explosive, or destructive device." Stone, 608 F.3d at 947 (quoting, 18 U.S.C. § 3142(g)(1)). Congress also thought it significant if the crime "involves a minor victim" or alleges a violation of "Section 1591" relating to the sex trafficking of children. 18 U.S.C. § 3242(g)(1).

Except for the allegations relating to the possession of firearm by an alien illegally in the United States as set forth in Count 29, the charges against Defendant are not of that ilk. Instead, they are primarily financial crimes.

A defendant charged with economic crimes can be "dangerous" to the community should the crimes continue on detention, *e.g.*, a "serial defrauder," United States v. Giordano, 370 F. Supp. 2d 1256, 1270 (S.D. Fla. 2005), but virtually any crime can be repeated while on bail. Nevertheless, "the default position of the law. . . is that a defendant should be released pending trial," a position which only is modified in favor detention "for certain, particularly dangerous defendants," specifically those accused of the "crimes listed in section 3142(e)(3)." Stone, 608 F.3d at 948.

The fact that firearms were found in Defendant's home does not readily lend itself to the conclusion that he is a threat to himself or others. His possession is illegal based upon his status of being an illegal alien, just as the status of being a felon makes possession of a firearm illegal. But it does not follow that mere possession equates with dangerousness. As has been explained:

8

Possession of a firearm can occur in an array of non-violent circumstances, weakening the link between possession and violence:

> "One can easily imagine a significant likelihood that physical harm will often accompany the very conduct that normally constitutes, say, burglary or arson. It is much harder, however, to imagine such a risk of physical harm often accompanying the conduct that normally constitutes firearm possession, for simple possession, even by a felon, takes place in a variety of ways (e.g., in a closet, in a storeroom, in a car, in a pocket) many, perhaps most, of which do not involve likely accompanying violence.

United States v. Bowers, 432 F.3d 518, 521 (3rd Cir. 2005) (quoting United States v. Singleton, 182 F.3d 7, 14-15 (D.C. Cir. 1999)); see also United States v. Lane, 252 F.3d 905, 906-07 (7th Cir. 2001) ("Most felonies after all are not violent . . . and ex-felons have the same motives as lawful possessors of firearms to possess a firearm—self-defense, hunting, gun collecting, and target practice"); United States v. Hardon, 1998 WL 320945, at *1 (6th Cir. June 4, 1998) (possession of a firearm and ammunition by a felon in violation of 18 U.S.C. § 922(g) is not a crime of violence for purposes of the Bail Reform Act).

Because Defendant is charged with being an illegal alien in possession of a firearm, his offense qualifies as "any felony ... that involves ... possession or use of a firearm," 18 U.S.C. § 3142(f)(1)(E). However, this offense alone does not qualify for a rebuttable presumption of detention, and Defendant is not alleged to have committed the qualifying offenses for the presumption under either 18 U.S.C. § 3142(e)(2) or (e)(3). See United States v. Vencomo-Reyes, 2011 WL 6013546, at *7-8 (D.N.M. Nov. 28, 2011). Moreover, the guns found at his home have been confiscated pursuant to the search warrant executed on February 11, 2014, and a standard condition of release which Magistrate Judge Byrant imposed – and this Court will likewise impose – is that Defendant not possess a firearm, destructive device, or other dangerous weapon.

## IV.

Based upon the foregoing, the Court concludes that the Government has not carried its burden of showing that detention is warranted and, accordingly, its Emergency Motion to Review Release Order (Docket No. 26) is hereby DENIED to the extent that it requests that Defendant be detained pending trial. The Court FINDS that there are conditions of release that will reasonably ensure Defendant's appearance at all court dates and ensure the safety of the community. In addition to the standard conditions of release and those imposed by Magistrate Judge Bryant, the Court will require that Defendant post a $100,000 bond secured by $10,000 in cash and the forfeiture of his residence should he fail to appear as required. Defendant will also be subjected to home confinement and electronic monitoring.

This file is RETURNED to Magistrate Judge Bryant, along with an executed copy of AO Form 199 "Order Setting Conditions of Release." The Court requests that Magistrate Judge Bryant process whatever forms are necessary for Defendant's release in accordance with this Order, and secure Defendant's signature on the appropriate paperwork.

It is SO ORDERED.

*Kevin H. Sharp*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE